

# In the Missouri Court of Appeals
# Eastern District
## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111454 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 19SL-CR07113-01 |
| | ) | |
| TYRUS A. YOUNG, | ) | Honorable Dean P. Waldemer |
| | ) | |
| Appellant. | ) | Filed: April 2, 2024 |

Before John P. Torbitzky, P.J., James M. Dowd, J., and Michael S. Wright, J.

**Introduction**

On December 2, 2019, on Wellston Place in St. Louis County, appellant Tyrus Young exited the front passenger door of a stolen BMW motor vehicle, fatally shot Victim as he was working on his car, and re-entered the BMW which then sped away from the scene of the shooting. After the police later managed to stop the BMW with spike strips, Young fled on foot and hid in the basement of a nearby vacant house where Police located and arrested him.

Police interviewed Young twice at the police station. During the first interview, he gave detectives a sample of his DNA. During the second interview, he admitted to riding in the BMW and to shooting Victim.

The State charged Young with second-degree murder, armed criminal action, and second-degree tampering with a motor vehicle. The jury found Young guilty on all counts and the court sentenced him to twenty years for the murder, five years for the armed criminal action, and one

year for the tampering with the sentences ordered to run consecutively for a total of twenty-six years.

Young now appeals arguing that the trial court erred in: (1) allowing the late endorsement of two witnesses who had extracted and analyzed Young's DNA sample; and (2) in not intervening *sua sponte* during the State's closing argument after the State suggested the jury had an opportunity to do something about violent crime in St. Louis County. We deny Point I and decline to review Point II for plain error. Young's convictions and sentences are affirmed.

## Background

At trial, an eyewitness standing near Victim testified that a man exited a BMW SUV through the passenger's door and shot Victim. A detective testified he lifted fingerprints from the vehicle's front passenger side and the police department's latent print examiner testified based on a reasonable degree of scientific certainty that the prints were Young's.

The State then attempted to adduce DNA evidence through a crime laboratory employee that a reddish-brown stain on the front passenger's seat of the BMW bore Young's DNA. Defense counsel objected to the testimony for lack of foundation because the employee was not the same person who extracted the DNA. The trial court sustained the objection.

To overcome this foundation defect, the State then sought leave to endorse two witnesses: (1) the witness who extracted the DNA and (2) the witness who performed the DNA analysis. The trial court granted the request and offered to the defense the opportunity to interview those new witnesses before their testimony. While Young objected to the late endorsement, he did not interview the witnesses. The two witnesses then testified to their roles in the DNA extraction and analysis and Young declined to cross-examine them.

2

After this foundational testimony, the crime laboratory employee retook the stand and testified that Young was the source of the reddish-brown stain on the passenger seat and that Young contributed to the DNA found on a cigar in the vehicle. Young did not object to this testimony.

In his case-in-chief, Young testified that he lied during his confession to police because he was coerced by the detectives and because his codefendant told him he would only receive a nine-month sentence based on a successful self-defense defense.

During its closing, the State said:

> Ladies and gentlemen, these violent incidents happen all too often in the County. That's why people don't want to live in certain neighborhoods. This can't happen. This can't be okay that somebody can get out of a car at 10 o'clock in the morning and fire off 11 rounds. You have a chance to do something about that today.

Young did not object.

## Discussion

### Point I

In Point I, Young asserts the trial court abused its discretion in overruling his objection to the State's late endorsement of the two witnesses who laid the foundation for the crime laboratory employee to testify Young was the source of the DNA found in the vehicle.

"A trial court has broad discretion to permit the late endorsement of additional witnesses." *State v. Hutchison*, 957 S.W.2d 757, 763 (Mo. banc 1997). "Abuse of discretion may only be found when the endorsement causes fundamental unfairness." *Id*. "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial. *State v. Kemp*, 212 S.W.3d 135, 145-46 (Mo. banc 2007).

3

The four factors generally used to determine whether the trial court has abused its discretion in allowing the late endorsement of witnesses are: (1) whether the defendant waived the objection; (2) whether the State intended to surprise the defendant or acted in bad faith; (3) whether the accused was in fact surprised and disadvantaged; and (4) whether the type of testimony given might readily have been contemplated. *Hutchison*, 957 S.W.2d at 763.

These factors in the context of this record demonstrate no abuse of discretion on the part of the trial court in allowing these foundational witnesses to testify. There is no indication the State sought to surprise Young or otherwise acted in bad faith. Young neither requested a continuance nor chose to interview the witnesses.[1] Young did not object to their testimony nor even cross-examine them. Thus, what occurred was not fundamentally unfair or prejudicial under Missouri law especially since Young knew his DNA had been extracted from the stain on the car seat where he was sitting and that the State would likely seek to prove as much at trial.[2]

*Point II*

In Point II, Young alleges the trial court plainly erred in failing to intervene *sua sponte* after the State argued during its closing that the jury had a chance to do something about violent incidents in St. Louis County.

Under certain circumstances, we may review unpreserved errors under our plain error standard of review. *State v. Townsend*, 649 S.W.3d 72, 78 (Mo. App. E.D. 2022); *see State v. Speed*, 551 S.W.3d 94, 97 (Mo. App. W.D. 2018) (citing *State v. Clay*, 533 S.W.3d 710, 718

---

[1] We can consider the failure to ask for a continuance when determining whether the trial court abused its discretion. *State v. Bynum*, 299 S.W.3d 52, 62 (Mo. App. E.D. 2009).

[2] In this regard, we follow the decisions in *State v. Trotter*, 241 S.W.3d 860 (Mo. App. S.D. 2007) and *State v. Downen*, 3 S.W.3d 434 (Mo. App. S.D. 1999) which under similar circumstances found the trial court did not abuse its discretion after the late endorsement of witnesses at trial where the State did not intend to surprise the defendant or act in bad faith.

(Mo. banc 2017)); Rule 30.20. Rule 30.20 states in relevant part that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *See Speed*, 551 S.W.3d at 98 (citing *State v. Taylor*, 466 S.W.3d 521, 533 (Mo. banc 2015)).

Plain error review is a two-step process. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). First, we must determine whether the claim of error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted.'" *Id*. (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995)); *State v. McKay*, 459 S.W.3d 450, 455-56 (Mo App. E.D. 2014); Rule 30.20. Not every prejudicial error, however, constitutes plain error, as plain errors are "evident, obvious, and clear." *Id*. If the claim of plain error facially establishes grounds for believing that manifest injustice or a miscarriage of justice resulted, we may elect to exercise our discretion and proceed to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id*.

This record does not reflect an evident, obvious, or clear error by the trial court during the State's closing argument and therefore we decline to review this point for plain error.

## Conclusion

For the foregoing reasons, Young's convictions and sentences are affirmed.

_____
James M. Dowd, Judge

John P. Torbitzky, P.J., and
Michael S. Wright, J., concur.

5